

I N T H E

# Court of Appeals of Indiana

Michael Rodgers,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Jul 20 2026, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

July 20, 2026

Court of Appeals Case No.
26A-CR-88

Appeal from the Huntington Circuit Court

The Honorable Davin G. Smith, Judge

Trial Court Cause No.
35C01-2411-F4-352

**Opinion by Chief Judge Tavitas**
Judges Bradford and Felix concur.

**Tavitas, Chief Judge.**

## Case Summary

Michael Rodgers was convicted of two counts of burglary, Level 4 felonies; two counts of theft, Level 6 felonies; and eight counts of theft, Class A misdemeanors. Rodgers argues that the State presented insufficient evidence to support his convictions for burglary and that the trial court abused its discretion in entering its restitution order. We disagree, and accordingly, affirm.

## Issues

Rodgers raises two issues on appeal, which we restate as:

> I. Whether the State presented sufficient evidence to support Rodgers' burglary convictions.
>
> II. Whether the trial court abused its discretion in determining its restitution order.

## Facts

In 2021, Nathaniel Minnich bought a three-acre property in Warren at an auction. The property had four structures on it: a house, a detached garage, a barn, and a shed. Minnich originally tried to move into the house, but the pipes froze that winter, around February 2022, and Minnich set up "an apartment" in the garage. Tr. Vol. II pp. 74, 105. Minnich ultimately moved in with his grandparents in Hoagland because it was too difficult to live in the garage

without running water. Minnich had consistently lived with his grandparents since February or March of 2022.

[4] Minnich visited his property about every two weeks to get the mail. Minnich always kept the garage locked, but he never locked the house. Although the exterior of the house was complete, the inside of the house did not have drywall or flooring and was missing subflooring and insulation. The house contained PEX tubing for a waterline; a disconnected water heater; an oven, which was disconnected from the gas line; and other torn-out furnishings, including a shower, a toilet, and cabinetry. There was no running water on the property. Minnich stored his tools on the property. He had some in the house, but most of the tools were in the garage.

[5] In the garage, Minnich had a bed; a refrigerator and freezer; a kitchen area, including a crockpot, seasonings, and silverware; a filing cabinet and desk containing bills, receipts, bank statements, paystubs, old Christmas cards, and a notebook where Minnich wrote down his login information; an air conditioner; some hunting gear; and a four-wheeler.

[6] On November 14, 2024, Minnich entered the house to get a transit level[1] and observed that he had fewer tools and building materials than he remembered.

---

[1] A transit level is an optical instrument mounted on a tripod. It is mainly used for surveying and building, and it can be used to determine precise angles and measurements.

Minnich also found that the door to his detached garage had been kicked in. The next day, Minnich noticed fraudulent charges on his credit card and contacted the Huntington County Sheriff's Office. The responding officer took many photos of the property, including a bulldozer in the barn, and encouraged Minnich to look for his items online.

[7] Minnich found many of his items being sold on Facebook Marketplace. The account selling Minnich's items had also listed Minnich's bulldozer. The photograph of the bulldozer was taken while it was in Minnich's barn, and, when the posting was discovered, it was already marked as sold. Although the bulldozer was in the barn when Minnich and the responding officer took photos of the property, Minnich returned a week later, and the bulldozer was gone.

[8] The Huntington County Sheriff's Office connected this Facebook account to Rodgers. The State charged Rodgers with: Count I, burglary of a dwelling, a Level 4 felony; Count II, theft, a Level 6 felony; Count III, burglary, a Level 4 felony; Count IV, theft of property valued between $750 and $50,000, a Level 6 felony; and Counts V through XII, separate charges of theft, as Class A misdemeanors.[2] On February 3, 2025, the State amended the charges to allege that Rodgers was an habitual offender.

---

[2] The charges were filed on November 27, 2024, and later amended on March 21, 2025.

A jury trial was held in November 2025. At the time of trial, the house was Minnich's mailing address, he was paying the mortgage, and electrical service was active at the property. Minnich did not remember the last time he did substantial work on the property but testified that he intended to move into the property once it was properly renovated.[3]

On November 20, 2025, a jury found Rodgers guilty of all twelve counts. On December 15, 2025, the trial court sentenced Rodgers to an aggregate sentence of thirty years composed of an eleven-year sentence on Counts I through XII, and an additional nineteen-year habitual offender enhancement. The trial court also ordered Rodgers to pay Minnich $12,508 in restitution. Although Minnich did not testify at sentencing, he submitted an itemized list of his damages with prices and item descriptions to the Huntington County Probation Department. Rodgers now appeals.

## Discussion and Decision

### I. The State presented sufficient evidence to support Rodgers' burglary convictions.

Rodgers argues that the State presented insufficient evidence to support his burglary convictions. Sufficiency of the evidence claims warrant a deferential standard of review in which we "neither reweigh the evidence nor judge witness

---

[3] Minnich was working seven days a week at the time of trial. Minnich is a heavy equipment operator.

credibility, instead reserving those matters to the province of the jury." *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024). A conviction is supported by sufficient evidence if "there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* In conducting this review, we consider only the evidence that supports the jury's determination, not evidence that might undermine it. *Id.* We affirm the conviction "'unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" *Sutton v. State*, 167 N.E.3d 800, 801 (Ind. Ct. App. 2021) (quoting *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007)).

[12] Rodgers was convicted of burglary pursuant to Indiana Code Section 35-43-2-1, which provides: "A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony. However, the offense is: (1) a Level 4 felony if the building or structure is a **dwelling** . . . ." (emphasis added). Indiana Code Section 35-31.5-2-107 defines a dwelling as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." "[O]ur courts have said that burglary of a dwelling is not so much an offense against property as it is an offense against the sanctity and security of

habitation." *Howell v. State*, 53 N.E.3d 546, 549 (Ind. Ct. App. 2016) (citing *Watt v. State*, 446 N.E.2d 644, 645 (Ind. Ct. App. 1983)), *trans. denied*.

[13] "[T]he legislature has provided an increased penalty for burglarizing a dwelling 'because of the potential danger to the probable occupants.'" *Id.* at 549 (quoting *Byers v. State*, 521 N.E.2d 318, 319 (Ind. 1988)). We also observe the unique threat to an intruder who enters a structure that is serving as a dwelling; Indiana Code Section 35-41-3-2(d) permits the use of deadly force to prevent an unlawful entry or attack on a dwelling.

[14] Rodgers argues that the State failed to present sufficient evidence to support his convictions on Count I: burglary (of the house), a Level 4 felony, and Count III: burglary (of the garage), a Level 4 felony. Tr. Vol. II pp. 48-50. Rodgers argues that neither structure qualified as a "dwelling." We disagree and find that both structures meet the statutory definition of a dwelling.

[15] Rodgers argues that Minnich's house was not a dwelling because Minnich had not lived in the house for about two and a half years; Minnich had not worked on the house in over a year and a half before discovering the burglary; and the house lacked subflooring, bathrooms, and running water. "It is well established that if a house is left empty temporarily by its occupant, the house does not lose its status as a dwelling if the occupant intends to return." *Howell*, 53 N.E.3d at 549. Minnich visited the property every few weeks; he kept his tools inside; and he intended to live in the house in the future. Rodgers is merely requesting that

we reweigh the evidence, which we cannot do. We find sufficient evidence was submitted for the jury to infer that the house was a dwelling.

[16] Rodgers also argues that Minnich's garage was not a dwelling because Minnich primarily lived with his grandparents and there was no running water in the garage. Indiana law, however, has long held that buildings with the accoutrements of comfortable living are considered dwellings. *See Burwell v. State*, 517 N.E.2d 812, 815 (Ind. Ct. App. 1988). In *Ferrell v. State*, our Supreme Court found that a house was a dwelling; the occupant was living elsewhere, but kept his furniture inside, and visited nearly every day to pick up the mail. 565 N.E.2d 1070, 1072 (Ind. 1991). Here, Minnich's garage contained his bed, a desk, a kitchen area, and a filing cabinet containing Minnich's personal financial documents. These accoutrements of comfortable living and Minnich's consistent, although infrequent, visits to the property indicate that the garage was a dwelling. Accordingly, we find that the State provided sufficient evidence to prove both of Rodgers' burglary convictions.[4]

## II. The trial court did not abuse its discretion in determining its restitution order.

[17] Rodgers argues that the trial court's restitution order was an abuse of discretion. We review a restitution order for an abuse of discretion. *Archer v. State*, 81

---

[4] Rodgers makes no substantive double jeopardy argument.

N.E.3d 212, 215 (Ind. 2017) (citing *Bell v. State*, 59 N.E.3d 959, 962 (Ind. 2016)). We will not reweigh the evidence nor judge witness credibility. *See Flowers v. State*, 154 N.E.3d 854, 871 (Ind. Ct. App. 2020).

[18] Restitution must be based on "property damages . . . incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate)," and "earnings lost by the victim . . . [while] participating in the investigation or trial of the crime." Ind. Code §§ 35-50-5-3(a)(1), (4).[5] The injury, harm, or loss must come as "a direct and immediate result of the criminal acts of a defendant." *Huddleston v. State*, 764 N.E.2d 655, 657 (Ind. Ct. App. 2002) (citing *Vanness v. State*, 605 N.E.2d 777, 783 (Ind. 1992)). "[T]he trial court abuses its discretion in ordering restitution 'only if no evidence *or reasonable inferences therefrom* support the trial court's decision.'" *Archer*, 81 N.E.3d at 216 (quoting *Little v. State*, 839 N.E.2d 807, 809 (Ind. Ct. App. 2005)) (emphasis in original). "Evidence supporting a restitution order is sufficient 'if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'" *S.G. v. State*, 956 N.E.2d 668, 683 (Ind. Ct. App. 2011) (quoting *T.C. v. State*, 839 N.E.2d 1222, 1227 (Ind. Ct. App. 2005)), *trans. denied*.

---

[5] This statute also provides for restitution to victims of crimes that harmed a victim's person. These sections are not applicable in this case.

[19] Rodgers argues that Minnich's ledger was insufficient to support the restitution order. Rodgers contends that the restitution order is based solely on speculation or conjecture. We conclude, however, that the evidence afforded a reasonable basis for estimating the loss.

[20] In *Guzman v. State*, this Court found that a letter concerning restitution for medical expenses was sufficient evidence to determine restitution when the letter was submitted to the probation department, was written by the victim, and was itemized by the amount and to whom the amount was due. 985 N.E.2d 1125 (Ind. Ct. App. 2013). As in *Guzman*, Minnich's itemized list enumerated each item that was missing from his property and the amount each item was worth. This list was attached to Minnich's Victim Impact Statement, which was part of the Huntington County Probation Department's pre-sentence investigation report. We find that the itemized list afforded a reasonable basis for estimating Minnich's loss.

[21] Next, Rodgers argues that some of the items on Minnich's list were not specifically proven at trial. Additionally, he argues that some of the claims for restitution were based on uncharged conduct, which he argues were not within the trial court's discretion to grant restitution. We disagree. In *Smith v. State*, this Court affirmed a restitution order based on the victim's testimony that, following Smith's theft, the victim was missing the items listed in the charging information and unlisted items, including between 350–400 CDs and $120 cash. 990 N.E.2d 517, 520 (Ind. Ct. App. 2013), *trans. denied*. We found that the

unlisted items demonstrated the extent of the victim's loss attributable to the entirety of the acts underlying Smith's conviction. *Id.* Here, the list provided by Minnich is based on charged conduct and demonstrates the extent of Minnich's losses that stemmed from Rodgers' theft and burglary convictions. Accordingly, we cannot say the trial court abused its discretion in determining its restitution order.

## Conclusion

[22] We find sufficient evidence to support Rodgers' convictions. And, the trial court did not abuse its discretion when it calculated its restitution order. We, accordingly, affirm.

[23] Affirmed.

Bradford, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Kristina L. Lynn
Lynn Law Office, P.C.
Wabash, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Alexa R. Rojas
Deputy Attorney General
Indianapolis, Indiana